**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.   **2:20-cv-951** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TWENTY-TWO THOUSAND ONE** | : | **VERIFIED COMPLAINT FOR** |
| **HUNDRED AND 00/100 DOLLARS** | : | **FORFEITURE IN REM** |
| **($22,100.00) IN UNITED STATES** | : | |
| **CURRENCY,** | : | |
| | : | |
| **Defendant.** | : | |

_____

Plaintiff, United States of America, by its undersigned counsel, alleges the following for

its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules

of Civil Procedure.

## NATURE OF THE ACTION

1.      This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which

provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished
> or intended to be furnished by any person in exchange for a controlled substance or
> listed chemical in violation of this subchapter, all proceeds traceable to such an
> exchange, and all moneys, negotiable instruments, and securities used or intended
> to be used to facilitate any violation of this subchapter.

## THE DEFENDANT IN REM

2.      The defendant is Twenty-Two Thousand One Hundred and 00/100 Dollars

($22,100.00) in United States Currency.   On or about August 6, 2019, the Drug Enforcement

Administration ("DEA") seized the defendant from Courtney Pettigrew's luggage, following a

consensual encounter with him at the John Glenn Columbus International Airport.    The defendant

has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 21 U.S.C. § 881(a)(6).   This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4.      This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

5.      Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendant was found in the Southern District of Ohio.

## BASIS FOR FORFEITURE

6.      The defendant is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## FACTS

7.      On August 6, 2019, members of the Columbus, Ohio Airport DEA Group at John Glenn Columbus International Airport ("CMH") received information regarding the suspicious travel of a passenger identified as Courtney Pettigrew ("Pettigrew").

a.      Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that persons engaged in the commercial interstate distribution of controlled substances frequently use CMH and the aircraft that arrive and depart there to transport drug sales proceeds and funds to be used to purchase drugs in and out of Columbus.   Those proceeds and funds are usually in the form of United States currency.

b.      Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that persons engaged in the commercial interstate distribution of controlled substances frequently use couriers to transport controlled substances, drug sales proceeds, and funds to be used to purchase drugs in and out of Columbus.   CMH and the aircraft that arrive and depart there are relied upon as a means of sending and receiving such couriers.

c.      Members of the Columbus, Ohio Airport DEA Group are trained and experienced in investigating illegal drug and drug currency couriers, and they have learned to observe and detect the behavior, characteristics, and other travel indicators which help them to distinguish suspected illegal drug and drug currency couriers from the normal, non-criminal traveling public.

d.      Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that illegal drug and drug currency couriers often purchase airline tickets within 72 hours of travel to known source areas for illegal drugs such as Los Angeles, California and/or Seattle, Washington, or to known destination areas for illegal drugs like Columbus, Ohio.   The members of the Columbus, Ohio Airport DEA Group also know that illegal drug and drug currency

couriers often purchase "quick-turn" trips, which are trips with short stays in narcotic source and/or destination areas, as the nature of their business does not require more than a quick drop-off or pick-up.

e.     DEA Special Agent Jonathan Hanley, DEA Task Force Officer Andrew D'Orazio ("TFO D'Orazio"), and DEA Task Force Officer Eric Doyle ("TFO Doyle") are members of the Columbus, Ohio Airport DEA Group.

8.     Based upon the information received, the officers learned that on August 5, 2019, Pettigrew purchased a one-way ticket on American Airlines Flight #2102 to fly on August 6, 2019, from Columbus, Ohio, to the Seattle-Tacoma International Airport with a layover at the Los Angeles International Airport.

9.     On August 6, 2019, TFO D'Orazio, TFO Doyle, and DEA Task Force Officer Raul Melo ("TFO Melo") went to the boarding gate designated for Pettigrew's flight and observed Pettigrew arriving in the area after the flight began boarding.   Through training and experience, the officers know that it is common for illegal drug and drug currency couriers to arrive very close to boarding time in an effort to thwart detection by law enforcement.   Officers noted that Pettigrew was carrying a backpack and a small shoulder bag.

10.     As the officers watched, Pettigrew approached the airline representative and scanned his boarding pass.   TFOs D'Orazio and Melo then approached Pettigrew in a way as not to block his freedom of movement, identified themselves as law enforcement officers, displayed their credentials, advised Pettigrew that he was not in trouble and was free to leave, and asked if he would speak to the officers about his travel.   Pettigrew agreed to speak to the officers.

11.     TFO D'Orazio explained to Pettigrew that he was speaking to him because of his recent ticket purchase.   Pettigrew offered no explanation for his late ticket purchase or why he

was traveling on a one-way ticket.

12.     TFO D'Orazio advised Pettigrew that he was investigating couriers of illegal drugs and drug proceeds and asked Pettigrew if he was carrying any illegal drugs or large amounts of money.   Pettigrew stated that he did not have any drugs but that he was carrying approximately $8,000.00 in his backpack, which he intended to use for setting up his clothing line business in Los Angeles.   When asked about his business deal and partners, Pettigrew did not provide further information about his clothing line or the names of anyone who could confirm his statement.

13.     Although Pettigrew stated that he was traveling to Los Angeles, his final flight destination for the flight reservation was the Seattle, Washington area.

14.     TFO D'Orazio asked Pettigrew if he would consent to a search of the bags that he had with him.   Pettigrew consented.

15.     As TFO O'Orazio began searching Pettigrew's backpack, he found a sunglasses case which contained approximately six bundles of currency—four bundles secured by bank bands indicating that each bundle totaled $2,000.00 and two bundles secured by rubber bands.   Based on his training and experience, TFO D'Orazio estimated that the bundles totaled approximately $10,000.00.

16.     TFO D'Orazio asked Pettigrew if he had additional currency in the bag.   Pettigrew said, "No."   As TFO D'Orazio continued his search, he located a leather zippered wallet under several articles of clothing at the bottom of the backpack.   Upon opening the wallet, he found a large bundle of cash, also secured with rubber bands.   Based on his training and experience, TFO D'Orazio estimated that the bundle totaled approximately $10,000.00.

17.     After finding the additional currency, TFO D'Orazio asked Pettigrew why he had stated that he had no additional currency in his bag.   Pettigrew did not respond.   TFO D'Orazio

repeated the question, and Pettigrew again declined to answer. TFO D'Orazio then asked Pettigrew why he was traveling with so much currency. This time, Pettigrew stated that he wanted to buy a watch and shop.

18. The officers also found four cellular telephones in Pettigrew's bag—two Apple brand phones, an LG brand phone, and a Samsung brand flip-style phone. Through his training and experience, TFO D'Orazio knows that carrying multiple phones of varying values and features is consistent with illegal drug trafficking activity. When asked why he was carrying four cellular telephones, Pettigrew did not provide a response.

19. In addition to the currency and cellular telephones, officers also located and seized a packet of "Sugar Stoned" brand THC edible gummies.

20. Based on the investigation, TFO D'Orazio advised Pettigrew that the officers would seize the currency, cellular phones, and the THC edible gummies. Pettigrew declined to accompany the officers to the DEA's airport office for additional investigation. The officers offered Pettigrew a DEA-12 custody receipt for the currency. Pettigrew refused to sign the receipt but accepted a copy. Officers noted that Pettigrew did not take his flight and left the area.

21. The officers returned to the DEA's airport office and requested assistance from Columbus Regional Airport Authority Police K-9 Officer Dale Beam ("Officer Beam") and certified narcotic detection K-9 "TRex" to conduct a K-9 sniff of the seized currency.

22. The currency was placed in a new United States Postal Service Priority Mail package ("USPS package") and sealed. The narcotic detection K-9 sniff consisted of two separate K-9 sniffs as follows.

a. Ten USPS packages were placed in a circle in the DEA office. Three of the packages were empty, and seven contained shredded, circulated and

un-circulated currency.    Officer Beam and K-9 TRex entered the area, and Officer Beam gave K-9 TRex the command to search.    K-9 TRex did not show a change in behavior in the room or on the ten packages.    Officer Beam and K-9 TRex then left the area.

        b.    The DEA officers replaced one of the packages with the USPS package that contained the money from Pettigrew.    The location of the money was unknown to Officer Beam.    Officer Beam and K-9 TRex returned to the area, and Officer Beam gave K-9 TRex the command to search.    As K-9 TRex worked his way through the room, Officer Beam noted that K-9 TRex showed a change of behavior on one of the packages.    For example, his breathing quickened, he squared off to the package, placed his front paws on top of the package, and then began scratching the package, indicating a positive alert for the odor of narcotics on the package.    The DEA officers advised Officer Beam that it was the package containing the money seized from Pettigrew.

23.    An official count of the United States currency seized from Pettigrew revealed that the currency totaled $22,100.00 (the defendant):

| Denomination | Quantity | Total |
|---|---|---|
| $100 | 197 | $19,700.00 |
| $50 | 20 | $1,000.00 |
| $20 | 70 | $1,400.00 |
| | | $22,100.00 |

24.    A check of Graves's criminal history and the Municipal Court records in Lima, Ohio, where Pettigrew was last known to reside, reveals numerous arrests related to narcotics, dating back to 2005.

25.    On or about November 25, 2019, the DEA received a Verified Statement of Interest

in the administrative proceedings from Pettigrew, asserting an interest in the defendant.

26.     Based on the forgoing facts, the United States asserts that the defendant, $22,100.00 in United States currency, represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.   Therefore, the property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a)     pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendant and to retain the same in its custody subject to further order of the Court;

(b)     the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c)     the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d)     the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e)  the Court award the United States all other relief to which it is entitled, including

the costs of this action.

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney


s/Deborah D. Grimes
DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711 / Fax (513) 684-6385
Deborah.Grimes@usdoj.gov

## VERIFICATION

I, Andrew T. D'Orazio, hereby verify and declare under the penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

_2/21/2020_
Date

ANDREW T. D'ORAZIO, Task Force Officer
Drug Enforcement Administration

10

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Twenty-Two Thousand One Hundred and 00/100 Dollars ($22,100.00) in United States Currency |

| (b) County of Residence of First Listed Plaintiff    Franklin | County of Residence of First Listed Defendant    Franklin |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Deborah D. Grimes, Assistant United States Attorney 221 E. Fourth Street, Suite 400 Cincinnati, Ohio 45202    (513) 684-3711 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question *(U.S. Government Not a Party)*

☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Forfeiture pursuant to 21 U.S.C. § 881(a)(6)

Brief description of cause:
Forfeiture

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE              DOCKET NUMBER

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/21/2020 | s/ Deborah D. Grimes |

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE